**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL LIGATO,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 16-5683** |
| **WELLS FARGO BANK, N.A., et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**LYNNE A. SITARSKI**                                              **March 2, 2018**
**U. S. MAGISTRATE JUDGE**

This case arises out of events that took place on May 7, 2015, at Defendant Wells Fargo Bank, N.A.'s branch office in Bensalem, Pennsylvania, which culminated in an altercation between a bank customer, Plaintiff Michael Ligato, and the branch office manager, Defendant Joseph Rumpf. Currently pending before the Court is a motion for summary judgment filed on behalf of Defendants, a motion for partial summary judgment filed on behalf of Counterclaimant Rumpf, (ECF No. 22), and an opposition to summary judgment filed by Plaintiff Ligato, (ECF No. 28). For the following reasons, summary judgment will be **GRANTED** in favor of Defendants and Counterclaimant Rumpf.

## I. PROCEDURAL BACKGROUND

Plaintiff Michael Ligato, ("Ligato") commenced this action on October 31, 2016, against Defendant Wells Fargo ("Wells Fargo") and Defendant Rumpf, ("Rumpf"), alleging state law tort claims based on the events of May 7, 2015. (Compl., ECF No. 1). Specifically, Ligato asserted claims for assault and battery by Rumpf, negligence and vicarious liability of Wells Fargo, and false imprisonment and spoliation of evidence by both Defendants. (Compl., Counts

III–VII, ECF 1).  Rumpf counterclaimed for personal injury damages based on assault and battery by Ligato.  (Countercl., ECF 4).

Jurisdiction is based on diversity, 28 U.S.C. § 1332, and by designation under 28 U.S.C. § 636(c)(1), upon the parties' consent.  (Consent and Order, ECF No. 11).

## II.  THE SUMMARY JUDGMENT RECORD[1]

On or about May 5, 2015, Ligato was staying at the El Rancho Hotel in Atlantic City, New Jersey.  (DSOF & Pl.'s Answer, ¶ 5).  Ligato noticed seven or eight ATM withdrawals from his Wells Fargo bank account that caused him concern.  (Deposition of Michael Ligato, taken July 31, 2017,[2] 54:2–56:18, 57:7-12; Deposition of Joseph Rumpf, taken July 31, 2017, 28:2–29:15, ECF 22-5; DSOF & Pl.'s Answer ¶ 6).  That same day, Ligato traveled from Atlantic City to the Bensalem Wells Fargo branch office, to complain about the "unknown" and "confusing" withdrawals from his account.  (Ligato Dep., 60:14-23; DSOF & Pl.'s Answer ¶ 7).

Upon arrival at the Bensalem Wells Fargo branch, Ligato spoke with bank branch manager Rumpf.[3]  (Rumpf Dep., 12:5-13, 28:8-23).  Ligato believed that someone from the

---

[1]  Defendants submitted a Statement of Undisputed Facts, ("DSOF"), (ECF No. 22, 24-31); Plaintiff filed an Answer to Defendants' Statement of Undisputed Facts, ("Pl.'s Answer"), (ECF No. 28), and a Counter-Statement of Undisputed Facts, ("CSOF").  (ECF No. 28, 4-6).  The Court has reviewed the parties' submissions and sets forth those facts that are undisputed or viewed in the light most favorable to Ligato, as the non-moving party.  Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  However, as discussed *infra*, Ligato is estopped from denying facts underlying his criminal conviction in the Bucks County Court of Common Pleas.  Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996); Logan v. Bd. of Ed. of Pittsburgh, No. 15-499, 2016 WL 7232571, at *1 n.1 (W.D. Pa. Dec. 14, 2016).

[2]  Unless noted otherwise, citations are made to excerpts of Ligato's testimony docketed at Defendants' Exhibit A (ECF 22-1).  As noted below, some citations are made to Plaintiff's Exhibit A (ECF 28-1 through 28-6).

[3]  Wells Fargo hired Rumpf as its branch manager of the Bensalem location in February of 2013.  Rumpf was never reprimanded by either Wells Fargo or by his previous employer for

Bensalem branch was stealing money from his account.  He shared his suspicion with Rumpf, who processed a fraud claim for Ligato.   (Rumpf Dep., 30:17–31:12; DSOF & Pl.'s Answer ¶ 11).  Rumpf informed Ligato that it would take about seven business days to investigate the claim.  (Rumpf Dep., 29:1-6, 16-21; DSOF & Pl.'s Answer ¶ 10).  Ligato described the interaction with Rumpf as "a normal encounter" and "[not] a bad encounter."  (Ligato Dep., 65:24–66:5; DSOF & Pl.'s Answer ¶ 13).  Ligato and Rumpf had no interactions before that day.  (Rumpf Dep., 32:18–33:3; DSOF & Pl.'s Answer ¶ 12).  Ligato left the bank without incident and returned to Atlantic City.

After returning to Atlantic City, Ligato noticed further questionable activity related to his Wells Fargo bank account.  (Ligato Dep., 64:7-18, 66:9-15).  For example, he discovered that his bank account was overdrawn when he attempted to buy a $5 shish-kebab in Atlantic City on May 6, 2015.  (Id., 64:14-18; DSOF & Pl.'s Answer ¶ 14).  Ligato decided to return to the Bensalem Wells Fargo branch to inquire about the additional questionable activity on his bank statement.  (Ligato Dep., 66:9-15, 66:24–67:3).

On May 7, 2015, Ligato traveled from Atlantic City to the Bensalem Wells Fargo branch office.  (Ligato Dep., 66:9-15, 66:24–67:3).  Ligato entered the bank, and spoke briefly with Rumpf, who was again on duty as bank manager.   (Ligato Dep., 66:24–67:5).  Ligato then went to the desk of Wells Fargo's personal banker, Darya Holton, and "confronted her," asking whether she had taken his PIN number because she wanted to take his money.  (Ligato Dep., 67:9–68:12, 89:19-24).  Holton burst into tears.  (Id., 68:1).  Ligato accused Holton and other Wells Fargo employees of making "unknown" ATM withdrawals from his account.  (Rumpf Dep., 36:11–39:8; DSOF & Pl.'s Answer ¶ 16; CSOF, ¶¶ 3, 6).

---

any incidents or unsatisfactory reviews.  (Rumpf Dep., 15:1-19, 104:3-6; DSOF & Pl.'s Answer ¶ 8).

Rumpf overheard Ligato interacting with Holton, approached Ligato, and asked him to leave the premises. (Ligato Dep., 70:15–71:1; Rumpf Dep., 43:5-15; DSOF & Pl.'s Answer ¶ 17; CSOF ¶ 3). Ligato refused to leave, even when Rumpf informed him that the police would be called. Ligato said he would sit down and wait for the police. During the time he waited for the police to arrive, Ligato continued to try to engage Holton, and told other customers that Wells Fargo was stealing his money. (Ligato Dep., 68:5-7, 70:19–71:12; Rumpf Dep., 43:9–44:10, 45:10-24. DSOF & Pl.'s Answer ¶ 18; CSOF ¶ 3).

Officer Raymond Hartman of the Bensalem Township Police Department responded to the call from the Bensalem Wells Fargo branch office. Officer Hartman spoke to Rumpf and then escorted Ligato out of the branch office. Ligato said, "I'll be back." Officer Hartman went back inside the branch and interviewed Wells Fargo personnel. Both Officer Hartman and Ligato left the premises. (Ligato Dep., 83:12-16, ECF 28-5, 84:16-18; Rumpf Dep., 47:4-48:23. DSOF & Pl.'s Answer ¶ 19; CSOF ¶ 4).

Not long after having been escorted out by Officer Hartman, Ligato returned to the bank. (Ligato Dep., 66:16-22, 89:3-18; Rumpf Dep., 67:16-21. DSOF & Pl.'s Answer ¶ 20). He entered the bank and immediately walked to the desk where Holton was sitting. (Rumpf Dep., 70:10-23, 72:10-22. DSOF & Pl.'s Answer ¶ 22). Rumpf walked from his desk to Ligato and Holton, and Rumpf asked Ligato to leave the premises. Ligato did not leave, and an altercation took place between Ligato and Rumpf.[4] (Ligato Dep. ECF 28-5, 96:12-20, 97:9-15; Rumpf Dep., 73:1–74:13. DSOF ¶¶ 24, 25). It is undisputed that Bensalem Township Police responded

---

[4] Ligato disputes the underlying facts surrounding the altercation. See, e.g., DSOF ¶¶ 24-25; Pl.'s Answer ¶¶ 23-25; CSOF ¶¶ 7-8. As discussed *infra*, Ligato is estopped from denying the facts underlying his criminal convictions for assault and harassment of Rumpf, and criminal trespass on the Bensalem Wells Fargo bank. Shaffer, 673 A.2d at 874; West Am. Ins. Co. v. Klein, No. 98-765, 1998 WL 351576, at *2-3 (E.D. Pa. June 29, 1998).

to the incident, handcuffed and arrested Ligato on the scene, and later charged him with violations of Pennsylvania's criminal statutes. (Ligato Dep. ECF 28-6, 108:18-23; Defs. Exs. H & I, Court Summary and Dockets, Ct. Com. Pl., Bucks Cnty., CP-09-CR-0004134-2015; DSOF & Pl.'s Answer ¶ 26).

Ligato was tried on the charges of intentional, knowing, or reckless simple assault, 18 Pa.C.S.A. § 2701(a)(1); harassment by subjecting the other person to physical contact, 18 Pa.C.S.A. § 2709(a)(1); and criminal defiant trespass, 18 Pa.C.S.A. § 3503(b)(1)(i). (Defs. Ex. I, Dockets; DSOF & Pl.'s Answer ¶¶ 26, 27). During his criminal prosecution, Ligato was represented by Attorney Elizabeth Dalton. (DSOF & Pl.'s Answer ¶ 28). Ligato testified in his own defense at his October 29, 2015 criminal trial. (DSOF & Pl.'s Answer ¶ 29). Claiming self-defense, Ligato testified that Rumpf physically assaulted him and that he did not physically assault Rumpf. (Id.). Rumpf also testified that Ligato physically assaulted and injured him, but that he, Rumpf, did not physically assault Ligato. Rumpf was cross-examined by Ligato's counsel, Attorney Dalton. (Rumpf Dep., 102:5-16; DSOF & Pl.'s Answer ¶ 30). Holton and another Wells Fargo employee testified at Ligato's trial. (Rumpf Dep., 113:19-24; DSOF & Pl.'s Answer ¶ 31).

Based on the testimony and evidence presented at the criminal trial, the Bucks County Court of Common Pleas found Ligato guilty of all charges and sentenced him to a maximum of 23 months of confinement. (DSOF & Pl.'s Answer ¶ 32). Ligato was further ordered to pay Rumpf restitution, have no contact with Rumpf, and to undergo a mental health evaluation. (Id.). Ligato did not appeal his convictions. (DSOF & Pl.'s Answer ¶ 33).

As noted above, Ligato instituted this action on October 31, 2016, against Wells Fargo and Rumpf. Discovery has been completed, and the matter is now ripe for consideration on summary judgment.

## III.    LEGAL STANDARD

Summary judgment is appropriate only if "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Cunningham v. M & T Bank Corp.</u>, 814 F.3d 156, 160 (3d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). To determine whether a movant has met this standard, "the court must view the facts 'in the light most favorable to the non-moving party.'" <u>N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464, 475 (3d Cir. 2011) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)). The "court 'may not weigh the evidence or assess credibility.'" <u>Goldenstein v. Repossessors Inc.</u>, 815 F.3d 142, 146 (3d Cir. 2016) (quoting <u>MBIA Ins. Corp. v. Royal Indem. Co.</u>, 426 F.3d 204, 209 (3d Cir. 2005)).

"A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" <u>Cunningham</u>, 814 F.3d at 160 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "To be material, a fact must have the potential to alter the outcome of the case." <u>N. Hudson</u>, 665 F.3d at 475 (citing <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. <u>Id.</u>

"After the movant shows that there is no genuine issue for trial, the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." <u>N. Hudson</u>, 665 F.3d at 475 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. In that case, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.; J.F. Feeser, Inc. v. Serv–A–Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The non-moving party "must do more than simply show that there is some metaphysical doubts as to the material facts." Id.

## IV. DISCUSSION

### A. Claims for Assault and Battery

Based on principles of issue preclusion,[5] Defendant Rumpf moves for summary judgment on Ligato's claim for assault and battery, (Count VI, ECF No. 1), and for partial summary judgment on his counterclaim against Ligato, (Countercl. 12-13, ECF No. 4). Under the doctrine of issue preclusion, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first action.'" Metro. Edison Co. v. Pa. Pub. Util. Comm'n, 767 F.3d 335, 351 (3d Cir. 2014), cert. denied, 135 S. Ct. 2372 (U.S. 2015) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). "Federal courts give preclusive effect to issues decided by

---

[5] Here, the parties use the expression "collateral estoppel," but as the Supreme Court has observed, "'issue preclusion' is the more descriptive term." Bravo–Fernandez v. United States, 137 S. Ct. 352, 356 n.1 (2016) (citing Yeager v. United States, 557 U.S. 110, 119 n.4 (2009)). "Res judicata includes the legal concepts of claim preclusion and issue preclusion. Claim preclusion prevents the relitigation of identical cases, whereas issue preclusion prevents the relitigation of discrete issues." Sec'y U.S. Dep't of Labor v. Kwasny, 853 F.3d 87, 94 (3d Cir. 2017).

state courts, to 'not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as the bulwark of the federal system.'" Id. (quoting Allen, 449 U.S. at 95-96). A federal court must look to state law to determine the preclusive effect of a prior state judgment. Id. at 350 (quoting 28 U.S.C. § 1738).

The Pennsylvania Supreme Court has established a five-prong test providing that relitigation of an issue is precluded when:

> (1) the issue decided in the prior adjudication was identical to the one presented in the later action;
>
> (2) there was a final judgment on the merits;
>
> (3) the party against whom it is asserted was a party or in privity with a party to the prior adjudication;
>
> (4) the party against whom it is asserted has had a full and fair opportunity to litigation the issue in question in the prior action; and
>
> (5) the determination in the prior proceeding was essential to the judgment.

Metro. Edison, 767 F.3d at 351 (applying Pennsylvania law).[6]

Under Pennsylvania law, "a party's 'criminal conviction may be used to establish the operative facts in a subsequent civil case based on those same facts.'" Kedra v. Schroeter, 876 F.3d 424, 443 n.14 (3d Cir. 2017) (quoting Commonwealth, Dep't of Transp. v. Mitchell, 535 A.2d 581, 585 (Pa. 1987)). Proof of a defendant's conviction is conclusive evidence of the crime for which he or she was convicted. Joyce v. Erie Ins. Exch., 74 A.3d 157, 165 (Pa. Super. Ct.

---

[6] Ligato concedes the second and third elements, see Pl.'s Resp. at 9 ("As to the second and third elements, these are not being contested by the Plaintiff as there was an adjudication to the criminal prosecution and Mr. Ligato was a party thereto."), and makes no argument as to the fifth, and thus has waived this issue.

2013); Harter v. Reliance Ins. Co., 562 A.2d 330, 333 (Pa. Super. Ct. 1989).  It is "well established that a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial."  Shaffer, 673 A.2d at 874 (citing among other authority, Hurtt v. Stirone, 206 A.2d 624, 626 (Pa. 1965), cert. denied, 381 U.S. 925 (1965)).

Issue preclusion or "[c]ollateral estoppel may be used as either a sword or a shield by a stranger to the prior action if the party against whom the doctrine is being asserted was either a party or in privity with a party in the prior action."  Harter, 562 A.2d at 335.  Here, Rumpf was a complainant, but neither he nor Wells Fargo was a party to the criminal prosecution by the Commonwealth against Ligato.  Rumpf seeks to preclude Ligato from denying and from asserting factual issues determined by the criminal judgment against Ligato, as follows.

### 1.      Rumpf's Counterclaim for Assault and Battery by Ligato

Counterclaimant Rumpf moves for partial summary judgment as to liability on his counterclaim against Ligato.  In doing so, Rumpf invokes the doctrine of offensive issue preclusion as a sword:  "Collateral estoppel is used offensively when the 'plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party.'"  Shaffer, 673 A.2d at 874 (quoting Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.4 (1979)).

Rumpf's counterclaim for the torts of assault and battery presents the identical factual issue decided in the criminal prosecution of Ligato for simple assault and harassment.  Simply stated, that question is:  Did Ligato assault and injure Rumpf?  Under Pennsylvania law, the tort of "assault may be described as an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery."  Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960) (emphasis in original); accord Sides v.

Cleland, 648 A.2d 793, 796 (Pa. Super. Ct. 1994), appeal denied, 656 A.2d 119 (Pa. 1995) (citing Restatement (Second) of Torts § 21 (1965)). The "tort of battery has been described as an unconsented touching that is either harmful or offensive." Cooper ex rel. Cooper v. Lankenau Hosp., 51 A.3d 183, 191 (Pa. 2012) (citing C.C.H. ex rel. T.G. v. Philadelphia Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008)) (defining a battery as "'a harmful or offensive contact with the person of another'") (quoting Dalrymple v. Brown, 701 A.2d 164, 170 (Pa. 1997)). In other words, "[a]ssault is an intentional attempt by force to do any injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citation and internal quotation marks omitted).

Following a state criminal bench trial, the Bucks County Court of Common Pleas convicted Ligato of simple assault and harassment of Rumpf. In Pennsylvania, a person is guilty of simple assault if he attempts to cause or intentionally, knowingly, or recklessly causes bodily harm to another. 18 Pa.C.S.A. § 2701(a)(1). A person is guilty of harassment when, "with intent to harass, annoy, or alarm another person," he strikes, shoves, kicks or otherwise subjects the other person to physical contact. 18 Pa.C.S.A. § 2709(1)(a). Consequently, in finding Ligato guilty of intentionally causing bodily injury to Rumpf, the state court decided the very issue presented by Rumpf's counterclaim – that Ligato intentionally caused bodily harm to Rumpf.

While the summary judgment record does not include the antecedent criminal record or the notes of trial testimony, the record before me nonetheless establishes what was actually litigated in state criminal proceedings, because Ligato admits to salient facts in responding to the

summary judgment motion.[7]  Importantly, Ligato admits that at the criminal trial on October 29, 2015, Rumpf testified that Ligato physically assaulted and injured him.  (DSOF & Pl.'s Answer ¶ 30).  Ligato also admits that he testified, in self-defense, that he did not physically assault Rumpf, but that Rumpf physically assaulted him.  (DSOF & Pl.'s Answer ¶29).  The court as the trier of fact did not credit Ligato's claim of self-defense, but did credit Rumpf's claim that Ligato assaulted him.  These two factual determinations were the linchpin to the trial court's finding Ligato guilty of simple assault and harassment of Rumpf, and Ligato does not contend otherwise.  There is no question that the criminal convictions decided the identical factual question presented by Rumpf's Counterclaim:  Did Ligato assault, batter, and injure Rumpf?  The answer to that question was an essential determination necessary to the guilty verdict on the charges of simple assault and harassment of Rumpf.

Notably, Ligato does not dispute that this was the issue before the state criminal court.  (Pl. Resp. 8, ECF No. 28) ("In the criminal prosecution, the Court was faced with a very limited issue of whether Mr. Ligato assaulted Mr. Rumpf.").  He instead argues that the issue of Wells Fargo's alleged negligence was not litigated in the criminal proceedings.  (Id. at 7-9).  That is true, and Defendants do not argue otherwise.  Defendant Wells Fargo has not moved for summary judgment as to Ligato's negligence claims based on issue preclusion.  Only Defendant Rumpf seeks to foreclose Ligato from litigating the issue of assault that was previously litigated

---

[7]  Ligato admitted the undisputed facts presented by Defendants that relate to his criminal prosecution and the evidence presented at the criminal trial. See Pl.'s Answer to DSOF ¶¶ 1, 26-34.

in state court.  Shaffer, 673 A.2d at 874 (quoting Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.4 (1979)).  As such, Ligato's argument on this point misses the mark. [8]

Ligato also argues that he did not have a "full and fair" opportunity to litigate "certain issues" - specifically, Wells Fargo's negligence - at his criminal trial.  (Pl.'s Resp. at 9-10).  While it is true that the alleged negligence of Wells Fargo was not litigated in the criminal trial, that is immaterial to the estoppel argument presented here.  Estoppel is asserted only as to the assault and battery claims.  The question is whether Ligato had a full and fair opportunity to litigate issues related to the alleged assault on Rumpf.  The summary judgment record establishes that during the criminal prosecution, Ligato had a full and fair opportunity to litigate his claim that Rumpf assaulted him, and that he did not assault, harass, or injure Rumpf.  Ligato was represented by private counsel and testified in self-defense.  (DSOF & Pl.'s Answer ¶¶ 28-29).  Ligato does not proffer any evidence that he did not have a fair trial, or receive all process that was due with regard to the assault and battery claim.  Furthermore, Ligato does not dispute that his convictions are final judgments on the merits, nor could he reasonably do so.  He did not appeal the convictions, and a "judgment is deemed final for purposes of res judicata or collateral estoppel unless or until it is reversed on appeal."  Shaffer, 673 A.2d at 874.

Accordingly, Ligato will not be permitted to deny acts that he was found, beyond a reasonable doubt, to have committed.  His convictions for simple assault and harassment conclusively determined that he in fact committed acts that meet the requisite elements of the torts of assault and battery of Rumpf.  Ligato is precluded from denying civil liability for those acts.  See, e.g., Shaffer, 673 A.2d at 873, 875 (affirming partial summary judgment as to civil

---

[8]  The instant action offered Ligato the opportunity to present evidence of Wells Fargo's alleged negligence.  As discussed more fully *infra*, Ligato failed to adduce any evidence in support of his negligence claim against Wells Fargo.

liability based on the defendant's prior criminal convictions for assault and possession of an instrument of crime).  Accordingly, Counterclaimant Rumpf is entitled to summary judgment on the issue of liability for his assault and battery claim against Ligato.

### 2. Ligato's Claim for Assault and Battery by Rumpf

Rumpf also moves for summary judgment on Ligato's claim for assault and battery.  In doing so, Defendant Rumpf invokes the doctrine of defensive issue preclusion:  "Defensive use" of issue preclusion "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another [party]" in an earlier action. Parklane Hosiery, 439 U.S. at 326 n.4.  Defensive use promotes judicial economy because the estoppel "precludes a plaintiff from relitigating identical issues by merely switching adversaries."  Id. at 329 (citation and internal quotation marks omitted).

Ligato's claim for the torts of assault and battery by Rumpf presents the ultimate factual question, which simply stated is:  Did Rumpf assault and injure Ligato?  This is the identical factual issue that was conclusively decided by the state court in rejecting Ligato's claim of self-defense.  The summary judgment record establishes that Ligato had a full and fair opportunity to litigate the issue, and the issue was actually litigated during Ligato's self-defense at the criminal trial.

Under Pennsylvania law, in cases of simple assault and harassment, which do not involve the use of deadly force, "'force may be met with force so long as it is only force enough to repel the attack.'"  Commonwealth v. Witherspoon, 730 A.2d 496, 499 (Pa. Super. Ct. 1999) (quoting Commonwealth v. Pollino, 467 A.2d 1298, 1301 (Pa. 1983)); Commonwealth v. Bailey, 471 A.2d 551, 553 (Pa. Super. Ct. 1984).  As to "use of force justifiable for protection of the person," Pennsylvania's criminal statutory law provides in pertinent part:

The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a). The defendant has "'no burden to prove' his self-defense claim." Commonwealth v. Smith, 97 A.3d 782, 787 (Pa. Super. Ct. 2014) (citing Commonwealth v. Torres, 766 A.2d 342, 345 (Pa. 2001)). If a claim of self-defense is presented, "the burden is on the Commonwealth to prove beyond a reasonable doubt that the claim lacks merit." Smith, 97 A.3d at 787. It is then up to the factfinder to pass upon the credibility of the evidence of self-defense. Bailey, 471 A.2d at 553.

At the criminal trial on October, 29, 2015, Rumpf testified that he did not physically assault or injure Ligato. Rumpf was cross-examined by Ligato's counsel. It is not disputed that Ligato put on evidence of self-defense. Ligato admits that he testified that Rumpf physically assaulted him. (DSOF & Pl.'s Answer ¶ 29). The Commonwealth put on evidence to insulate its case from Ligato's self-defense challenge. It is not contested that the state court as the trier of fact found that the Commonwealth proved beyond a reasonable doubt that Ligato's claim of self-defense was unworthy of credence. The issue of whether Rumpf assaulted Ligato - the identical issue presented by Count VI of Ligato's Complaint - has been decided by the state court.

The factual issue of whether Rumpf assaulted and injured Ligato was essential to Ligato's claim of self-defense. The court in rejecting that claim as the trier of fact necessarily found that the Commonwealth proved beyond a reasonable doubt that Ligato did not reasonably believe that he was in danger of the use of force by Rumpf. Cf. Smith, 97 A.3d at 787 (stating the elements of a claim of self-defense) (citing Commonwealth v. Hammond, 953 A.2d 544, 559 (Pa. Super. Ct. 2008), appeal denied, 964 A.2d 894 (Pa. 2009)) (quoting Commonwealth v. McClendon, 874 A.2d 1223, 1230 (Pa. Super. Ct. 2005)). Again, the court as the trier of fact

rejected Ligato's self-defense argument and found him guilty of simple assault and harassment. The verdict against Ligato conclusively determined that Rumpf did not assault and injure Ligato, and the judgment is final and valid.

Accordingly, Ligato is precluded here from asserting here that Rumpf assaulted, battered, and injured him. That factual assertion was found beyond a reasonable doubt to lack merit by the criminal court below. Accordingly, summary judgment is warranted in favor of Defendant Rumpf on Ligato's tort claims of assault and battery.

### B. Claims Against Wells Fargo for Negligence and Vicarious Liability

Defendant Wells Fargo moves for summary judgment on the claims for negligence and vicarious liability. (Compl., Counts III, IV). Plaintiff Ligato opposes the motion, arguing that "had Wells Fargo properly supervised, monitored, and/or managed their employees and/or the area where the altercation took place, this incident would not have happened." Pl.'s Resp. at 8. The summary judgment record contains no evidence to support Ligato's negligence claims. To prevail on a negligence claim under Pennsylvania law, "a plaintiff 'must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage.'" Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009) (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003) (citation and internal quotation marks omitted)). Ligato has not adduced evidence to establish the requisite elements of a negligence claim against Wells Fargo.

Other than Rumpf's alleged assault, Ligato has neither alleged nor proffered evidence that any other danger, hazard, condition, or conduct caused his alleged injuries. Instead, Ligato bases his negligence claims against Wells Fargo on the alleged assault committed by Rumpf, arguing that Wells Fargo failed to: "adequately and properly staff the Bank," "properly hire, supervise and train . . . employees," "call the local police department within a reasonable

15

amount of time," "provide proper supervision of the area," "stop the assault," "explain to the police what happened," and "monitor the area." (Compl. ¶ 12(A)–(I)). The summary judgment record is devoid of any evidence to support any of the Ligato's negligence claims against Wells Fargo. Moreover, as amply discussed in Section IV(A)(2), Ligato is estopped from asserting that Rumpf assaulted and battered him. Therefore, Wells Fargo cannot be found negligent based on the faulty factual predicate that Rumpf assaulted Ligato.[9]

Ligato's negligence claims fail for another reason. Ligato contends that Wells Fargo had a duty to "provide appropriate security," to protect him from the dangers presented by Rumpf, and to "rescue" Ligato from Rumpf. Id. ¶ 11-12. Ligato has neither alleged nor proffered evidence to support a duty or obligation recognized by law requiring Wells Fargo to conform to a certain standard of conduct for Ligato's protection against the alleged attack by Rumpf. To the contrary, under Pennsylvania law, a third party committing an intentional tort or a crime is a superseding cause. Dittman v. UPMC, 154 A.3d 318, 323 (Pa. Super. Ct. 2017), appeal granted, 170 A.3d 1042 (Pa. 2017) (citing Ford v. Jeffries, 379 A.2d 111, 115 (Pa. 1977)). "It is well established that a defendant does not have a duty to guard against the criminal acts of superseding third-parties unless he realized, or should have realized, the likelihood of such a situation." Id.; Mahan v. Am–Gard, Inc., 841 A.2d 1052, 1060-61 (Pa. Super. Ct. 2003), appeal

_____

[9] Ligato also argues that Wells Fargo allegedly breached a duty to protect him, a "business invitee," from an attack by Rumpf. However, Ligato was convicted of criminal defiant trespass. See 18 Pa.C.S.A. §3503(b)(1)(i) ("A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains any place as to which notice against trespass is given by (i) actual communication to the actor."). Thus, being a trespasser, Ligato can only recover for injuries sustained on Wells Fargo's premises by proving that Wells Fargo acted wantonly or willfully. Eberwein v. Precision Tube Co., No. 12-0612, 2013 WL 1628191, at *1 (E.D. Pa. April 16, 2013) (citing Rossino v. Kovacs, 718 A.2d 755, 756–57 (Pa. 1998)). He has proffered no evidence to support such a claim. Rossino, 718 A.2d at 756-57 (recognizing general rule under Pennsylvania law that no duty exists to a trespasser except to refrain from willfully or wantonly injuring the trespasser).

denied, 858 A.2d 110 (Pa. 2004). In addition, a duty to protect a business invitee - assuming *arguendo* that Ligato held that status - from third party conduct arises only if the owner has reason to anticipate such conduct. Reason v. Kathryn's Korner Thrift Shop, 169 A.3d 96, 102-04 (Pa. Super. Ct. 2017); Truax v. Roulhac, 126 A.3d 991, 997-98 (Pa. Super. Ct. 2015), appeal denied, 129 A.3d 1244 (Pa. 2015). As to a business's duty to come to the aid of a business invitee, the "business [is] not required to act as a policeman in the face of an ongoing assault." Reason, 169 A.3d at 105. A "business satisfies its duty to aid a business invitee by calling 911 or another source of . . . police assistance." Id. at 105-06.

Here, the summary judgment record is devoid of any evidence that Wells Fargo knew that Rumpf was a danger to anyone. It is undisputed that Rumpf was never reprimanded by Wells Fargo or by his previous employer for any incidents or unsatisfactory reviews. He had no history of violence.[10] In addition, Rumpf and Ligato first met only two days before the May 7, 2015 incident. Ligato described that meeting as a "normal encounter" and "[not] a bad encounter." Ligato points to no evidence that Wells Fargo knew, or should have known, that Rumpf posed a danger to Ligato. In the absence of any evidence that Wells Fargo was on notice that Rumpf might act violently, Ligato's theory that Wells Fargo had a duty to take precautions to protect against an attack by Rumps fails. Moreover, the record establishes that Wells Fargo called the police within a reasonable period of time and that police arrived while the altercation was still taking place. (Ligato Dep. ECF 28-6, 102:30–107:20).

In short, Ligato has not made out the requisite elements of the negligence claims on which he bears the burden of proof—that is, a duty or obligation recognized by law requiring

---

[10] Ligato concedes as much in his response to Defendants' Statement of Undisputed Facts by neither admitting nor denying that Rumpf "ever posed any physical danger to any individual prior to May 7, 2015, or that Wells Fargo was aware of such evidence." (DSOF & Pl.'s Answer 9).

Wells Fargo to conform to a certain standard of conduct for his protection against unreasonable risks, or a causal connection between the challenged conduct by Wells Fargo and his alleged personal injuries. Accordingly, on these grounds alone, Wells Fargo is entitled to summary judgment. Celotex, 477 U.S. at 322-23.

As to Ligato's vicarious liability claim, it is "well settled" under Pennsylvania law, "that an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment." Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 493 (Pa. Super. Ct. 1998), appeal denied, 727 A.2d 1120 (Pa. 1998). Conduct is considered "within the scope of employment" if:

> (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

Id. (citing Fitzgerald v. McCutcheon, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979) (ruling that off-duty police officer was not acting in the scope of his employment when he shot a neighbor)). Here, Ligato acknowledges that an intentional tort by an employee, such as Rumpf assaulting Ligato, would be outside the scope of Rumpf's employment by Wells Fargo. (Pl.'s Resp. at 11 n.1). To the extent Ligato claimed that Wells Fargo employees were "negligent in their care and treatment" of him, the record contains no evidence to support any of the requisite elements of a negligent act by any employee, for which Wells Fargo could be found vicariously liable.

Accordingly, summary judgment is granted in favor of Defendant Wells Fargo on Counts III and IV of the Complaint.

### C.    Claims for False Imprisonment

Defendants move for summary judgment on the claim for false imprisonment.  (Compl., Count V).  Ligato claims that on May 7, 2015, he was unlawfully detained at Wells Fargo's branch office in Bensalem.  He also claims that Wells Fargo's employees "gave false and misleading testimony to the police, which led to [his] false imprisonment and wrongful incarceration."  (Compl. ¶ 29).  These claims are not supported by the summary judgment record.

Under Pennsylvania law, the "elements of false imprisonment are:  (1) the detention of another person, and (2) the unlawfulness of such detention."  Regan v. Upper Darby Twp., 363 F. App'x 917, 922 (3d Cir. 2010) (quoting Renk, 641 A.2d at 293).  "'In addition to unlawful activity, Pennsylvania law requires:  (1) acts intending to confine another within boundaries fixed by another which (2) directly or indirectly result in such confinement (3) of which the plaintiff is conscious or by which the plaintiff is harmed.'"  Id. (quoting Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 540-41 (E.D. Pa. 1982) (citing Gagliardi v. Lynn, 285 A.2d 109, 111 n.2 (Pa. 1971); Restatement (Second) of Torts § 35 (1965)).  The confinement of the plaintiff must be complete.  Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998).  "If a known, safe means of escape, involving only a slight inconvenience, exists, then there is no false imprisonment."  Id.  Importantly, the plaintiff "'must make some request to leave, which request is denied by the defendant.'"  Regan, 363 F. App'x at 922 (quoting Pennoyer v. Marriott Hotel Servs., Inc., 324 F. Supp. 2d 614, 620 (E.D. Pa. 2004) (citing Chicarelli, 551 F. Supp. at 541)); Caswell, 5 F. Supp. 2d at 319 (plaintiff must make some an "attempt to determine whether his belief that his freedom of movement has been curtailed has basis. This can be done, for instance, by making a failed request to leave.").

First, Ligato argues that an unidentified "bank employee did not allow [him] to leave," and "stood in front of the doors blocking [him] from leaving."  (Pl.'s Resp. at 10; Compl. ¶ 28).

Ligato testified that after the encounter with Rumpf ended, but during the ensuing altercation with other unidentified Wells Fargo employees and customers, he was "out of breath," so he sat down in a chair and waited for the police to arrive. (Ligato Dep. ECF 28-6, 104:15-24, 107:12-18). In Ligato's words, "I was waiting - - couldn't wait for the police to get there." (Id., 107:16-17). He also testified that he "wanted to leave," but an unidentified "light skinned black guy" "wouldn't let me out of the bank" and "made me stay in." [11] (Id., 106:18-24, 107:1-7). Accepting all of this as true, Ligato's assertion is not enough to defeat summary judgment.

The "'fact that a plaintiff merely believes [he] is not free to leave is not enough to support a claim of false imprisonment.'" Regan, 363 F. App'x at 922 (quoting Caswell, 5 F. Supp. 2d at 319 (ruling that a manager standing at the front door was not sufficient evidence of confinement). A plaintiff must make some "attempt to determine whether his belief that his freedom of movement has been curtailed has basis." Caswell, 5 F. Supp. at 319 (quoting Chicarelli, 551 F. Supp. at 541). Even assuming that a Wells Fargo employee stood by the bank door, the record is devoid of any evidence that Ligato made an effort to leave the bank premises, or made a request to leave that was denied. In fact, Ligato freely chose to sit in a chair until the police arrived. He also testified that from the time he sat down until the police arrived no words were exchanged between him and any Wells Fargo employee. (Ligato Dep. ECF 28-6, 106:16-24, 107:12-18). Because there is no evidence that Ligato attempted to leave the bank, summary judgment is warranted in favor of Defendants.

_____

[11] Ligato never identifies the "light skinned black guy" by name, nor does he identify him as a Wells Fargo employee. He points to no record evidence regarding the identity of the individual who he claims kept him from leaving the bank. Although not identified by Ligato, the record does contain testimony from Rumpf that a bank employee locked and stood in front of the front door "because the police were on their way." (Rumpf Dep. ECF 28-11, 84:4-7). Even assuming that a Wells Fargo employee blocked the bank entrance, Ligato's false imprisonment claim still fails because there is no evidence that Ligato ever asked to leave the premises. See Caswell, 5 F. Supp. 2d at 319.

Ligato also claims that Wells Fargo's employees "gave false and misleading testimony to the police, which led to [his] false imprisonment and wrongful incarceration." (Compl. ¶ 29). In some circumstances, a private individual may be found liable of false imprisonment for knowingly providing false or incomplete information to law enforcement officials. <u>Cooper v. Muldoon</u>, No. 05-4780, 2006 WL 1117870, at *3-5 (E.D. Pa. April 26, 2006). However, in this case, Ligato does not identify what statements were made by whom, when, or the surrounding circumstances. Nor does he point to evidence that anyone knowingly provided false of incomplete information that led to his ultimate arrest and conviction. At summary judgment, Ligato cannot "rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." <u>Jones v. United Parcel Serv.</u>, 214 F.3d 402, 407 (3d Cir. 2000) (citing <u>Celotex</u>, 477 U.S. at 324). Because Ligato relies on unsupported allegations, Defendants are entitled to summary judgment as to this aspect of his false imprisonment claim.[12] <u>See Reiber v. Filipone</u>, No. 15-6192, 2016 WL 3388333, at *2-3 (E.D. Pa. June 20, 2016).

Accordingly, summary judgment is granted in favor of Defendants on Count V of the Complaint.

---

[12] In essence, Ligato conflates the claim for unlawful detention by Wells Fargo's employees with a claim for false imprisonment by the Commonwealth. This is an impermissible collateral attack upon his criminal conviction. Ligato did not appeal his criminal judgment, and he does not argue that the judgment is invalid. His criminal conviction may not be collaterally attacked through this civil action. <u>See, e.g.</u>, <u>Markus v. Dillinger</u>, 191 F. Supp. 732, 735 & n.7 (E.D. Pa. 1961) (citing <u>Mangold v. Neuman</u>, 91 A.2d 904, 906 (Pa. 1952)); <u>see also</u> <u>Pendleton v. Todd</u>, No. 202 C.D. 2016, 2016 WL 4792000, at *4 (Pa. Commw. Ct. Sept. 14, 2016). Perhaps even more importantly, Ligato's convictions for trespass, simple assault, and harassment conclusively establish that Ligato's detention was lawful. <u>Brown v. Cohen</u>, No. 09-2909, 2012 WL 2120281, at *6 (E.D. Pa. June 12, 2012).

**D.     Claims for Spoliation and Fraudulent Concealment of Evidence**

Defendants move for summary judgment on the claims of spoliation and fraudulent concealment of evidence.  (Compl., Count VII).  Ligato abandons the spoliation claim, and he fails to proffer any evidence to support the fraud claim.

Defendants correctly note that Pennsylvania does not recognize an independent tort action for spoliation of evidence.  Paluch v. Sec'y Pa. Dept. Corrections, 442 F. App'x 690, 694-95 (3d Cir. 2011) (per curiam) (citing Pyeritz v. Commonwealth, 956 A.2d 1075, 1082 (Pa. Commw. Ct. 2008), aff'd, 32 A.3d 687, 692-95 (Pa. 2011)).  Accordingly, a "freestanding spoliation action" for failure to establish policies and procedures to preserve video surveillance footage, or for failure to properly investigate by preserving video surveillance footage, is not actionable.  Paluch, 442 F. App'x at 692, 694-95.  Ligato acknowledges as much, abandoning the spoliation claim as a standalone cause of action.  (Pl.'s Resp. at 11).

Ligato asserts that Defendants represented that there were no video recordings of the altercation.  (Pl. Resp. at 8, 11).  However, the record before me is devoid of any evidence of a single representation by Defendants to that effect.  Ligato surmises that "there should be a video of what transpired," and he is "adamant that a bank would have video of a fight that occurred in the middle of one of their banks."  (Id. at 4, 8-9, 11).  He asserts that Defendants "concealed" video surveillance footage, which amounts to fraud.  (Id. at 9-11).  Speculation and belief are not facts, and Ligato "may not rest upon mere allegations, general denials, or . . . vague statements." Port Auth. of N.Y. & N.J. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002).  We further note that the record  demonstrates that Ligato actually reviewed a video related to this case, and still photos from a bank video were introduced at Ligato's criminal trial, thereby undermining Ligato's argument that Defendants "concealed" evidence of video surveillance footage from the May 7, 2015 incident.  (Ligato Dep. at 93:22– 94; Rumpf Dep. at 111:8-113:18).  The record

contains no evidence to support the requisite elements of the asserted fraudulent concealment

claim.  See, e.g., Milliken v. Jacono, 60 A.3d 133, 140 (Pa. Super. Ct. 2012), aff'd, 103 A.3d 806

(Pa. 2014) (summarizing the elements).  Consequently, "there can be no 'genuine issue as to any

material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at

322-23, 324.


## V.    CONCLUSION

Having reviewed the parties' submissions and the record evidence, I find that the material

facts, even if viewed in the light most favorable to Plaintiff Ligato, do not present any genuine

triable disputes as to the claims contained in the Complaint.  Defendants are entitled to summary

judgment in favor of:  Wells Fargo on Counts III and IV, Defendant Rumpf on Count VI, and

both Defendants on Counts V and VII.  Counterclaimant Rumpf is entitled to summary judgment

on his Counterclaim as to the issue of Counterclaim Defendant Ligato's liability.


BY THE COURT:


    /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE